IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

THE KIDWELL GROUP, LLC D/B/A
AIR QUALITY ASSESSORS OF
FLORIDA A/A/O JATIN PATEL,

      Appellant,

v.

Case No. 5D21-2946
LT Case No. 2021-SC-013615-0

ASI PREFERRED INSURANCE CORP.,

      Appellee.

_____/

Opinion filed November 22, 2022

Appeal from the County Court
for Orange County,
Carly S. Wish, Judge.

Chad A. Barr, of Chad Barr Law,
Altamonte Springs, for Appellant.

Kenneth B. Bell and Lauren V. Purdy, of
Gunster, Yoakley & Stewart, P.A.,
Tallahassee, for Appellee.

EISNAUGLE, J.

      The Kidwell Group, LLC d/b/a Air Quality Assessors of Florida a/a/o

Jatin Patel ("Kidwell") appeals an order dismissing its complaint with prejudice

after the trial court determined that an agreement assigning Kidwell insurance proceeds failed to comply with section 627.7152, Florida Statutes (2020). Kidwell argues, *inter alia*, that the assignment agreement (the "assignment") is merely voidable rather than void, and as a result, ASI Preferred Insurance Corp. ("ASI") does not have standing to challenge the validity of the assignment. We disagree and affirm.

Procedural History

The homeowner and insured in this case, Jatin Patel, purchased a homeowner's insurance policy from ASI and allegedly suffered a covered loss. Patel executed an agreement that assigned the proceeds for his claim under the policy to Kidwell. The following day, Patel received an invoice from Kidwell for assessment services performed at the property totaling $2,875. The invoice included the date, balance due, a description of services provided, an hourly rate and total number of hours, and a demand for payment within thirty days. Kidwell submitted the invoice to ASI, but ASI refused payment in full.

Kidwell then filed a complaint for breach of contract and eventually filed an amended complaint that attached the policy, assignment, and invoice.[1]

---

[1] Kidwell also attached another invoice for $3,500 but dropped that claim during the hearing below.

2

ASI moved to dismiss the complaint, arguing that Kidwell failed to comply with section 627.7152 and therefore lacked standing as an assignee.

In opposition, Kidwell argued that failing to comply with the statute merely rendered the assignment voidable, not void, and that ASI does not have standing to challenge the assignment if it is merely voidable.

The trial court dismissed the amended complaint, reasoning that Kidwell did not comply with section 627.7152.[2] This appeal follows.

## On the Merits

On appeal, Kidwell asserts that ASI does not have standing to challenge the assignment because it was merely voidable, relying heavily on the reasoning in *SFR Services, LLC v. Indian Harbor Insurance Co.*, 529 F. Supp. 3d 1285, 1295 (M.D. Fla. 2021). As we explain below, we disagree with Kidwell and hold that ASI has standing to challenge the assignment pursuant to section 627.7152.

## Standing

"To have standing, a party must demonstrate a direct and articulable interest in the controversy, which will be affected by the outcome of the

---

[2] We conclude, without further discussion, that the invoice delivered after execution of the assignment in this case demanding payment for work performed failed to comply with section 627.7152(2)(a)4.'s requirement that the assignment agreement include a "written, itemized, per-unit cost estimate of the services to be performed."

3

litigation." *Centerstate Bank Cent. Fla., N.A. v. Krause*, 87 So. 3d 25, 28 (Fla. 5th DCA 2012) (citations omitted). "Standing depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest that would be affected by the outcome of the litigation." *Id.* (citation omitted).

Interpretation of the Statute

ASI's interest in this case, and therefore its standing to challenge the assignment, turns on the meaning of the terms "invalid" and "unenforceable" as used in section 627.7152(2)(d). That provision provides:

> An assignment agreement that does not comply with this subsection is invalid and unenforceable.

§ 627.7152(2)(d).

"In interpreting the statute, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Forrester v. Sch. Bd. of Sumter Cnty.*, 316 So. 3d 774, 776 (Fla. 5th DCA 2021) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020)). "The words of a statute are to be taken in their natural and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense." *Lab. Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022) (citation omitted).

4

Where a statutory term is undefined, we may consult dictionary definitions to help us discern the term's plain and ordinary meaning. *See Orlando Reg'l Healthcare Sys., Inc. v. Fla. Birth-Related Neurological*, 997 So. 2d 426, 431 (Fla. 5th DCA 2008). However, "[c]ontext always matters because sound interpretation requires paying attention to the whole law, not homing in on isolated words or even isolated sections." *Richman v. Calzaretta*, 338 So. 3d 1081, 1082 (Fla. 5th DCA 2022) (citation omitted). Therefore, a dictionary definition might be helpful, but it is not conclusive because dictionary definitions are acontextual. *Palumbo v. State*, 52 So. 3d 834, 835 (Fla. 5th DCA 2011) (Torpy, J., concurring); *accord United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012).

With this framework in mind, we first consult Black's Law Dictionary, which defines "invalid" as "[n]ot legally binding." *Invalid*, *Black's Law Dictionary* (11th ed. 2019). The definition of "unenforceable" suggests a subtle difference from the term "invalid." The term "unenforceable" is defined as "valid but incapable of being enforced." *Unenforceable*, *Black's Law Dictionary* (11th ed. 2019). Black's Law Dictionary further explains that an "unenforceable contract" "may be good, but incapable of proof owing to lapse of time, want of written form, or failure to affix a revenue stamp." *Unenforceable Contract*, *Black's Law Dictionary* (11th ed. 2019) (citation

5

omitted). In other words, "the contract is unimpeachable, only it cannot be proved in court." *Id.*

The definition of "voidable" stands in direct contrast to the statutory term "invalid." Black's Law Dictionary defines "voidable" as a contract "capable of being affirmed or rejected at the option of one of the parties." *Voidable*, *Black's Law Dictionary* (11th ed. 2019). Notably, "voidable" "describes a valid act that may be voided rather than an invalid act that may be ratified." *Id.*

These dictionary definitions lend support to ASI's argument that it has authority to challenge the validity of the assignment. For instance, if the assignment is not legally binding, ASI would have an interest in challenging the assignment because Kidwell never even stepped into the shoes of the insured and therefore does not have any right to enforce the policy to begin with. *See Kidwell Grp., LLC v. Olympus Ins. Co.*, 346 So. 3d 658, 660–61 (Fla. 5th DCA 2022). Likewise, if the assignment is valid but cannot be "proved in court," ASI would have an interest in opposing use of the unenforceable assignment in this court proceeding. *See Air Quality Experts Corp. v. Fam. Sec. Ins. Co.*, 47 Fla. L. Weekly D2066, D2068 (Fla. 4th DCA Oct. 12, 2022) ("Whether the contract is of no legal effect or is not legally binding, it is unenforceable.").

6

The terms "invalid" and "unenforceable" are not synonymous with a "voidable" contract which can be "affirmed or rejected" at the option of one party. In fact, the definition of "voidable" expressly refutes Kidwell's argument because that word describes a *valid* act, and not an *invalid* act.

Although these dictionary definitions are helpful, we must also consider the statute's context, including "the purpose of the text, gathered only from the text itself, consistently with the other aspects of its context." *USAA Cas. Ins. Co. v. Mikrogiannakis*, 342 So. 3d 871, 874 (Fla. 5th DCA 2022) (citation and internal marks omitted).

Other parts of the statute provide additional indicia of meaning and confirm ASI's authority to challenge the assignment. First, subsection (2)(a)3. mandates that the assignment agreement "[c]ontain a provision requiring the assignee to provide a copy of the executed assignment agreement to the insurer within 3 business days" after execution or the date work begins, whichever is earlier. § 627.7152(2)(a)3. Second, subsection (2)(a)4. then provides that the assignment agreement must include "a written, itemized, per-unit cost estimate of the services to be performed." § 627.7152(2)(a)4.

Third, and perhaps most compelling, the statute requires an assignee "to demonstrate that the insurer is not prejudiced by the assignee's failure to

7

. . . [d]eliver a copy of the executed assignment agreement to the insurer within 3 business days after executing the assignment agreement or work has begun, whichever is earlier." § 627.7152(3)(d).

Taken together, these additional provisions leave little doubt that ASI has standing to challenge the assignment in this case. Indeed, we fail to see why the legislature would require prompt notice of the assignment (and, as a result, the written estimate), or why an assignee would be required to demonstrate a lack of prejudice to an *insurer*, if the insurer has no authority to challenge an offending assignment. As this case demonstrates, the insurer might be in the best position, if not the only party in a position, to enforce the statute.

In short, Kidwell's argument that ASI cannot challenge the assignment is inconsistent with the plain and ordinary meaning of the terms "invalid" and "unenforceable," and is also in direct conflict with the statute's purpose of prompt notice to the insurer.

Given our interpretation of the plain meaning of the statute, we find *SFR Services* unpersuasive. In that case, the United States District Court for the Middle District of Florida considered the issue presented here—and denied the insurer's motion to dismiss reasoning that, under the common law,

8

an obligor such as ASI could only challenge a void assignment, and not one that is merely voidable.

In so doing, the federal district court referenced the language of the statute but concluded:

> Even if the statutory terms "invalid and unenforceable" <u>could</u> mean "void," they could <u>also</u> mean voidable. So the question of whether a noncomplying AOB is void or merely voidable cannot be answered merely by referring without further analysis to the statutory language "invalid and unenforceable."

529 F. Supp. 3d at 1294.

We disagree with *SFR Services* for two primary reasons. First, that case emphasized *common law* definitions of the terms "void" and "voidable"—but we are interpreting a statute, and those terms are not used in section 627.7152(2)(d) at all*.*

Second, and importantly, while *SFR Services* analyzed the term "invalid," it failed to fully consider the other term used in the statute—that the assignment is "unenforceable." As observed above, even if the assignment were "valid," which it is not, ASI would nevertheless have authority to challenge the assignment in court as "unenforceable." *See Air Quality Experts*, 47 Fla. L. Weekly at D2068.

9

Therefore, given the plain and ordinary meaning of the statute's text, we conclude that ASI has standing to challenge the assignment for failing to comply with section 627.7152.

AFFIRMED.

EVANDER and COHEN, JJ., concur.